# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **RICHARD L. KOLESAR,** | CASE NO. 1:19 CV 35 |
| Plaintiff, | JUDGE DAN AARON POLSTER |
| vs. | **OPINION AND ORDER** |
| **ALLSTATE INSURANCE COMPANY,** | |
| Defendant. | |

In early February 2015, Plaintiff Richard L. Kolesar, who resides primarily in Baltimore, Maryland, sustained substantial water damage to a second residence he owns in Euclid, Ohio. The damage arose from a pipe on the second floor that froze, and then ruptured, during a prolonged period of below-freezing temperatures that winter in Ohio. The cases arises from Defendant Allstate Insurance Company's ("Allstate") denial of the insurance claim Kolesar filed on February 6, 2015.

The case is before the Court on Defendant Allstate's Motion for Summary Judgment. **Doc #: 12**. Allstate contends that Kolesar does not have standing to bring the insurance coverage claims, the contract claim is time barred, and the contract and bad faith claims lack merit. For the reasons that follow, Defendant's Motion is **GRANTED**.

## I.    Background

In 1955, Plaintiff Richard Kolesar's parents built and moved into a home at 24550 Hawthorne Drive in Euclid, Ohio ("Property). (The Complaint is located at pages 3 to 15 of Doc #: 1-1 ("Comp."). In November 1996, following his father's death, Kolesar assumed

maintenance responsibilities for the home. *Id*. ¶ 2. On September 27, 2006, Kolesar, who resided in Baltimore, Maryland, became sole owner of the Property just 21 months prior to his mother's death. *Id*. Since that time, Kolesar lived at the Property intermittently, in periods ranging from two weeks to several months. Doc #: 16 ("Opp. Br.") at 3.

In September 2006, Kolesar consulted an Allstate Insurance agent, Schofield Insurance, about a homeowners policy for the Property, fully disclosing the intermittent nature of his residence in Ohio. Opp. Br. at 3. Allstate's agent recommended that he purchase Allstate's Deluxe Homeowners Policy – which Kolesar did, and maintained that coverage until May 23, 2015. *Id*. (The relevant insurance policy, No. 02492488 issued on May 24, 2014, is located at Doc #: 12-1 at pages 7-54 ("Policy")).

Kolesar asserts he took reasonable measures to ensure the Property was adequately heated when he was not there by monitoring the utility bills for abnormalities and by having a trusted friend in Ohio, Paul Fitzgerald, check in on the Property. *Id*. ¶ 21, 23. Prior to the loss, Fitzgerald had last visited the Property in late December 2014 to ensure it was sufficiently heated and reported to Kolesar that the furnace was in good working order. *Id*. ¶ 22. On January 16, 2015, Kolesar paid the gas bill for early December 2014 through early January 2015, in the amount of $60.99, which was consistent with the amounts he had paid previously. Comp. ¶ 23. On February 5, 2015, however, Kolesar received information from the City of Cleveland Division of Water that there had been a marked increase in water usage at the Property beginning on January 18, 2015. *Id*. ¶ 20, 40; Doc # 12-1, Ex. B-1 at 56. Kolesar took immediate steps to shut off the water and electricity and contacted Fitzgerald to investigate the

Property. *Id.* ¶ 25. On February 6, 2015, Fitzgerald entered the Property, found the water damage, and reported the damage to Kolesar. *Id.* That same day, Kolesar contacted Allstate and filed a claim, prompting Allstate to send a forensic engineer and field adjustor to visit the Property on February 13, 2015 and February 20, 2015, respectively. *Id.* ¶¶ 20, 26.

After investigating the claim, Allstate sent a denial of coverage letter to Kolesar on February 26, 2015. *Id.* ¶ 30. In its denial letter, Allstate explained:

> We have carefully examined the circumstances surrounding this loss and believe, at this time, we have sufficient information to make a decision regarding your claim.
>
> We have found that there is no coverage available for the loss that occurred on February 05, 2015. As a result, we will not be able to make any payments for the following reasons: Reasonable care to maintain heat was not used per the following policy requirement:
>
> **Losses We Do Not Cover Under Coverages A and B:**
>
> We do not cover loss to the property … consisting of or caused by:
>
> 16. Freezing of plumbing, fire protective sprinkler systems, heating or air conditioning systems or household appliances, or discharge, leakage or overflow from within the systems or appliances caused by freezing, while the building structure is vacant, unoccupied or being constructed unless you have used reasonable care to:
> a) maintain heat in the building structure; or
> b) shut off the water supply and drain the system and appliances.

Policy at 8 ¶16.

Based on Allstate's denial, Kolesar filed a Complaint on December 11, 2018 in the Cuyahoga County, Ohio Court of Common Pleas, alleging claims for breach of insurance contract and bad faith. *Id.* The case was removed to this Court on January 7, 2019 based on the

-3-

Court's diversity jurisdiction. Doc #: 1. On April 8, 2019, Defendant filed the pending Motion, Doc #: 12; on May 20, 2019, Kolesar filed a response memorandum, Doc #: 16; and on June 10, 2019, Defendant filed a reply, Doc #: 19. On June 24, 2019, absent leave of Court, Kolesar filed a surreply brief. Doc #: 20. The Court has reviewed the briefs, the record and is prepared to issue a ruling.

**II.     Standard of Review**

Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, if a reasonable jury could return a verdict for the nonmoving party, summary judgment for the moving party is inappropriate. *Baynes v. Cleland*, 799 F.3d 600, 606 (6th Cir. 2015) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). The movant bears the initial burden of showing that there is no material issue in dispute. *Id*. at 607 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is deemed material only if it might affect the outcome of the case under the governing substantive law. *Id*. (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). In reviewing a motion for summary judgment, the court must view the facts and any inferences reasonably drawn from them in the light most favorable to the nonmoving party. *Id*. (citing *Kalamazoo Acquisitions, LLC v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005)).

///

### III. Analysis

#### A. Standing

Allstate contends that the case should be dismissed because Kolesar, who filed for Chapter 13 bankruptcy relief in 2018, is not the real party in interest; rather, the bankruptcy trustee is the real party in interest. Doc #: 12 at 16. Thus, Kolesar has no standing to bring this case. *Id.* In support, Allstate cites *Auday v Wet Seal Retail, Inc.*, 698 F.3d 902 (6th Cir. 2012) (finding that a Chapter 7 debtor does not have standing to pursue an age discrimination case after the claim became a property of the bankruptcy estate). *Id.* Kolesar did not address this argument in his response memorandum. Allstate *correctly* pointed Kolesar's omission in its reply. Doc #: 19 at 1. Consequently, the Court grants summary judgment on this basis alone. *Weatherby v. Fed. Express*, 454 Fed. Appx. 480, 490 (6th Cir. 2012) (deeming a plaintiff's failure to address an argument as abandonment of a claim); *Emerman v. Financial Commodity Investments, LLC*, No. 1:13 CV 2546, 2016 WL 231309, at *8 (N.D. Ohio Jan. 19, 2016) (same).

That said, Kolesar filed, without leave of Court, a surreply turning the tables on Allstate and arguing that the Court should ignore Allstate's real-party-in-interest argument because Allstate's reply "did not add anything to the discussion raised in the Motion and Opposition." Doc #: 20 at 1. But, as shown above, it was Kolesar's responsibility to address this argument in his response memorandum, and he failed to do so.

Furthermore, Kolesar contends that, because his bankruptcy petition was filed in the United States Bankruptcy Court for the District of Maryland, Fourth Circuit precedent should be controlling over his standing as a debtor. Doc #: 20 at 6. In support, he cites *Wilson v. Dollar General Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) ("[B]ecause the Chapter 13 debtor is explicitly given the power to possess and use the property, and implicit within that use is the permissible

maintenance of a cause of action that is part of the estate, the Chapter 13 debtor has standing to maintain a prepetition claim."). However, the Sixth Circuit has concluded that a Chapter 13 debtor does not have standing to bring a claim after having filed for Chapter 13 relief and while the bankruptcy is pending. *Rugiero v. Nationstar Mortgage, LLC*, 580 Fed. Appx. 376, 378 (6th Cir. Sep. 15, 2014) (extending *Auday* to Chapter 13 debtors).

It is this district court's obligation to apply the law of the Sixth Circuit to this case, and not to follow the decisions of other circuits. *Pidcock v. Schwab*, 569 B.R. 463, 478-79 (N.D. Ohio 2017) (citing *In re Higgins*, 159 B.R. 212, 215 (S.D. Ohio 1993) (holding that the general rule is that "district courts are bound by decisions of the Sixth Circuit even if decisions from other circuits seem more persuasive.")). Accordingly, because Kolesar is a Chapter 13 debtor who filed this case while his bankruptcy case was pending, the Court concludes that he does not have standing to bring this insurance coverage case. *Rugiero*, 580 Fed. Appx. at 378.

### B. Breach of Contract Claim

Even if Kolesar had standing to bring this insurance coverage case, the Court would still dismiss it because he filed it after the applicable limitation period expired.

The provision in the Policy that addresses limitations provides:

**12.** **Suit Against Us**
No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage occurs.

Policy at 17 ¶ 12.

The Ohio Supreme Court has long held that insurance contracts may lawfully limit the time within which a suit may be brought against an insurer as long as the period fixed in the policy is not unreasonable. *Appel v. Cooper Ins. Co.*, 76 Ohio St. 52 (1907). Ohio courts have

*specifically* held that the one-year limitation language in Kolesar's insurance contract is reasonable as a matter of law. *See, e.g., Hounshell v. American States Ins. Co,* 67 Ohio St.2d 427, 431 (1981); *Figetakis v. Owners Ins. Co.*, 2006-Ohio-918 ¶ 17; *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 710 (6th Cir. 1992). At the earliest, the contractual limitation period accrued on February 6, 2015, when Kolesar submitted a claim to Allstate; at the latest, the contractual limitation period accrued on February 26, 2015, when Allstate sent its denial letter to Kolesar. Either way, Kolesar filed this case more than two years after the contract claim accrued. Consequently, the claim is time-barred.

Kolesar argues that Allstate waived the limitations period by breaching the implied covenant of good faith in the handling of his claim. The Ohio Supreme Court has ruled, however, that waiver may occur only "when the insurer, by its acts or declarations, evidences a recognition of liability under the policy, and the evidence reasonably shows that such express recognition of liability and offers of settlement have led the insured to delay in bringing an action on the insurance contract." *Thomas*, 974 F.2d at 710 (citing *Hounshell,* 67 Ohio St.2d at 431). Kolesar has failed to point to anything remotely suggesting that Allstate indicated any recognition of liability or induced Kolesar to refrain from filing suit. Accordingly, the waiver argument lacks merit.

Even if the contract claim was timely filed, the Court would dismiss it on the merits. Allstate retained an independent expert, Craig L. Williams, Jr., a Senior Forensic Engineer, to inspect the Property. Williams did so on February 13, 2015, and subsequently provided a report. (The report is located at Doc #: 12-2 ("Williams Report")). The report explains that the water damage occurred because the pipe that froze was located on an exterior wall, the heat was not adequately maintained in the home, the water was not turned off or drained from the pipes – and

all this occurred at a time when the house was unoccupied. Williams Report ¶¶ 6-7. Kolesar does not dispute that the damage occurred when the Property was unoccupied, the damage was caused by water freezing in the pipe to the second floor bathroom, or the water was not turned off or drained from the pipes. Rather, he argues that the furnace has worked properly since 2009 and he maintained adequate heat in the Property. This position is based on a gas bill *preceding* the month in which the damage occurred–which gas bill was consistent with previous gas bills. Whether the gas bill the month preceding the damage was consistent with previous bills is irrelevant to the question whether the heat was sufficient to protect a pipe adjacent to an exterior wall during sub-freezing temperatures in the month the damage actually occurred. Apparently, the Property was *not* sufficiently heated at the time the damage occurred because it is undisputed that the pipe froze at some time during the prolonged period of sub-freezing temperatures in Cleveland in mid-January to early February 2015, and Kolesar did not turn off the water or drain the water from the pipes.

Kolesar also argues that the policy provision cited by Allstate when excluding his claim does not apply to him because Allstate knew when Kolesar purchased the policy that he only lived in the house intermittently; thus, the provision excluding coverage of damage caused by frozen water pipes when the Property is vacant or unoccupied and the owner fails to maintain adequate heat, turn off the water, or drain the water from the pipes does not apply to him. It does not matter that the contract has a provision which permits an insured to be away from the premises, as the exclusion relied upon by Allstate when it denied Kolesar's claim unambiguously states that if the home is unoccupied and there has not been reasonable care taken to maintain heat in the home and freezing of pipes occurs, then there is no coverage.

### C. Bad Faith Claim

Kolesar contends that he can still bring his bad faith claim against Allstate since he has brought it within the four-year limitations period for bad faith claims. However, since the Court has found that Allstate did not breach the Policy with Kolesar, the Court concludes that Allstate could not have acted in bad faith as a matter of law. See *Broad v. North Pointe Ins. Co.*, 2014 WL 1097925, at * 9 (N.D. Ohio Mar. 19, 2014) (holding that since denial of the insured's claim was justified, the insurer could not have acted in bad faith when the breach of contract and bad faith claims were premised on the same facts).

Furthermore, to withstand a motion for summary judgment on a bad faith claim, the insured must oppose such motion with evidence showing that the insurer had *no reasonable justification for refusing the claim. Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 630 (1992). If the Court finds that the insured's claim was fairly debatable and that the denial was premised on either the status of the law at the time or a genuine dispute of the facts giving rise to the claim, then summary judgment is appropriate. *Id*. The evidence shows that Allstate thoroughly investigated Kolesar's claim, hired an independent engineer to provide an opinion, properly interpreted its Policy with Kolesar and found an exclusion to apply. Even viewing the evidence in Kolesar's favor, the Court finds that the insurer had reasonable justification for refusing Kolesar's bad faith claim, which claim was fairly debatable. Thus, the Court grants summary judgment respecting Kolesar's bad faith claim.

///

**III. Conclusion**

Based on the foregoing, the Court **GRANTS** Defendant Allstate's Motion for Summary Judgment. **Doc #: 12**.

**IT IS SO ORDERED.**

 /s/ *Dan A. Polster     July 9, 2019*
**Dan Aaron Polster**
**United States District Judge**